7095 Robinson v. Department of Veterans Affairs, Mr. Carpenter. May it please the Court, Kenneth Carpenter, appearing on behalf of Mr. Marvin Robinson. Mr. Robinson appears before this Court asserting that the Veterans Court improperly imposed an issue exhaustion requirement based upon the fact that he was represented by counsel in the proceedings before the Board prior to the appeal to the Veterans Court. Well, not exactly. I mean, the Veterans Court did say it either had to raise the issue or it had to be raised by the record. Correct. And they found that there was no evidence in the record here which suggested a direct service connection, which is hard for us to overturn that affirmance of the Board because it's factual in nature. So what's the effect of this holding that there was an exhaustion requirement? I mean, if there wasn't, what would the duty to assist get the Veteran here that the Veteran didn't get? There's no issue about records, right? The Veteran got the records. Well, it may in fact be in relationship to what did or did not take place in terms of a disease or injury that was noted that would have related to either his heart condition or to his thyroid disorder that occurred during the period of service. There was no development of the record in regards to those questions in this case. So part of your contention is that the VA should have made a search for additional records? Is that the point? Well, the point is that in this Board decision, and I direct the Court's attention to the appendix attached to the blue brief at page 37, where the issues were identified. And the first two issues that are identified identify the issue as only in relation to secondary to the already service-connected peptic ulcer. The Department of Appeals for Veterans Claims says if there was an issue about direct service connection raised by the record, they had to pursue it whether it was raised or not, right? That's the rule of law that has been adopted below. That is correct. Okay, so what I'm trying to get at is if the issue isn't raised by the record, what is the Veteran losing here as a result of the Board's not treating this as a direct service connection issue? Do I make myself clear? Yes, I believe so. What it is being deprived of is the development of the record in relationship to an alternative theory, or in this case a primary theory, of entitlement to compensation. But I don't understand what's the VA supposed to do if the record doesn't suggest anything about direct service connection? Frankly, they're supposed to identify the fact that there is nothing in the record, and they have reviewed the record to determine that there is no basis within the record, as it has been fully developed, to indicate that there is, in this case, a heart disease or a thyroid disorder during the period of service that could possibly be related to his post-service disabilities. So the problem is that they haven't stated the reasons that they didn't do it? They haven't addressed it specifically? That's part of it. What normally happens... What else besides that? Well, that there was no opportunity for the VA to investigate. There was no opportunity taken by the VA to investigate what did or did not happen in service that may have been related to... You're suggesting that there was a service event that caused the thyroid condition or the heart problem. But that's the catch-22 here, Your Honor. There's nothing in the record because the VA made no effort to develop the record. The VA made no effort to determine whether there was any service record that indicated that Mr. Robinson suffered from a heart condition or a thyroid condition during service, that was noted during service that could possibly be related to the disability which they concede he has from those two conditions post-service. So it's basically a records issue. They should say, well, he has a heart... Well, I guess the medical exams say he didn't have a heart condition, but he has a thyroid condition. We're obligated to go search the records to see if there's anything in the service records that might suggest a service origin for this thyroid condition. That's correct, that they have an affirmative duty in the first instance to explore that, if you will, primary option for the right to entitlement to benefits. And as such, without that having been done with or without the benefit of counsel, the veteran is deprived of the very essence of this system, which is that the VA will take that affirmative action in order to develop the record. Let me test that with you, Mr. Carpenter, a little bit differently, if I may. Let's take a different case. Let's assume a veteran who has a back injury during service. Clearly has a back injury and on discharge is given an appropriate VA award of benefits, disability benefits. For the back, yeah. For the back. For the back. Ten years later, the veteran files a claim saying my left knee is giving me a lot of trouble and I'd like a disability benefit for that as well. I would assume that your argument, maybe I shouldn't assume it, but would it be the case, Mr. Carpenter, that you would argue that given that and nothing more, the VA has an obligation to determine whether that knee might be a secondary consequence of the back injury or whether that knee may have been a direct injury occurring during service? You assume correctly. All right. Let me change the facts just a little bit. Same case, back injury, disability. Ten years later, files a claim for knee. But this time the veteran says I injured my back, as the record will show, lifting heavy weights. It is also the case that while I was in service I had this skiing accident and injured my knee. And I want benefit for that. Yes. Under that circumstance, would the VA have an obligation, in your view, to try to tease out whether that knee might be a secondary consequence of the back injury when the veteran has alleged in his second claim a specific injury that is attributable to this knee problem? My initial reaction would be that they would not. However, that would be dependent upon what was developed in the course of the VA's investigation. But that's the key, isn't it? Yes. In the course of the VA's investigation of the knee injury, given information that the veteran had a ski injury, independent of anything related to the back, the VA, probably in developing the record, would not spend time exploring the medical question of whether someone with that particular back injury might favor one leg or the other, eventually causing a knee problem. Instead, they'd focus on the question of was this veteran there at the time he alleges and is there any evidence in the record that he had this ski injury and could that now explain ten years later why he's got a problem, right? They wouldn't go into a lot of studies about relationships between backs and knees or would you expect them to? Well, I think the problem with your hypothetical is that you're presupposing a direction that is adopted by the VA in terms of its investigation. I'm presupposing a direction that is pointed to by the veteran in the way in which the veteran presents his case. And the question I'm asking you in connection with what Judge Dyke was pursuing with you is how far do you want the VA to be obligated to go when the veteran points away from that particular focus? It's not really a question of how far I want the VA to go. It's a question of how far their investigation takes them. If they develop medical records from the VA and a private physician and in one or both of those medical records there is a reference to the fact that the examining physician is of the opinion that the current disability is not related to the ski accident but is in fact approximately due to or the result of the back injury. No problem there. Now you've got it on record. In the absence of that. In the absence of that because he gets all the medical, he gets doctors examining his knee, but nobody thinks to make that connection. But that's the catch-22 here. I understand that. It's not a matter of nobody thought to or the veteran didn't think to or his advocate didn't think to raise that question. It's a question of developing the evidence which starts with the service medical records and then goes to all medical records. And there was nothing in the record, absolutely nothing in the record that would have led to this because of the way in which the veteran said, oops, I had a ski accident. That hypothetical would have supported the conclusion that Judge Dyke was referring to that was made by the court below. But that is all supposition because there was no development. There must have been. He gets this service connection for his peptic ulcer. Yes. What's the cause? What's the service event, the injury or disease that led to the peptic ulcer? You're testing my recollection on the peptic ulcer. My recollection is, I'm not sure it's correct, but my recollection is that there was an ulcer noted during service that he had symptoms and manifestations and received medical treatment for and then post-service had a peptic ulcer. And that was diagnosed and that was the reason. But the narrowness of the focus of that claim as it related to peptic ulcer looked only to the peptic ulcer and the symptoms related to the peptic ulcer. But the problem I'm having is that there doesn't seem to be anything in this record where the veteran suggested a service injury or disease that might lead to a thyroid or a heart condition. And the reason I was asking about the peptic ulcer is whether you're contending that the same event that led to the peptic ulcer should have alerted them. No, you're not contending. No, no, no, no. I mean, I don't believe the facts as I understand them support that. It's merely a question of... Any time it comes to their attention, to the VA's attention, that there's a disability, some sort of condition, that they have to go and investigate, even though the veteran doesn't suggest that there's any service origin, direct service origin to that condition. That's correct, Your Honor, because that is the independent duty, the affirmative duty that is assigned by Congress to the VA as part of its inquisitional role in this process. Duty to... To get the records to affirm or disaffirm that there was an injury or disease in service that could be related to the post-service injury. They cannot simply say denied without having gotten those records, and that is what didn't happen here. There was no development of the underlying events that took place in service. It was merely assumed by the court below that somehow that must have been in the record. You wouldn't suggest, would you, that the VA has an obligation to comb through the records of every veteran to see if there is any grounds for a disability pension, would you, without having a complaint or a claim filed? Now you're shifting to pension, Your Honor? I'm shifting the focus a little bit. You wouldn't go so far as to say that in the absence of a claim being filed, the VA has a responsibility to check records just to be sure somebody doesn't have a right to a pension that hasn't been asked for? Actually, I would, Your Honor. You would? Yes, because... Is there any basis for that? Yes, there's case law below that says a claim for one is a claim for both, but more importantly, the VA's own form, VA 21-526, is a claim for compensation or pension, and they do have an affirmative duty to ascertain whether there was or wasn't wartime service and to qualify for the pension whether the person is totally and permanently disabled now, independent of whether or not the condition or conditions are met. That's the whole set of... That's right, that's the subset. But that hasn't been expanded to everything else. No, no, no, no. That's the predicate or the underlying statutory requirement to be awarded a pension. But the duty to assist here does not apply every time the veteran has something wrong with them. The duty to assist exists if there's a reasonable possibility that it's service-connected, right? No. By qualifying it with there's a reasonable possibility that it's service-connected allows the VA to presuppose that possibility. They cannot presuppose that possibility until they have done a minimum investigation by identifying the veteran's service medical records and determining whether there is or isn't any evidence of an injury. Well, suppose that the veteran has direct service connection for osteoporosis and the veteran breaks his leg and he pursues it as a secondary service connection claim that the osteoporosis caused the broken leg. And now he comes up and he says, well, actually now I'd like you to look to see whether there was a service injury or disease that caused the broken leg. But that seems, you know, it can't be, can it, in those circumstances that the VA has an obligation to determine whether it's service-connected when there's nothing in the record to suggest that the broken leg is the direct result of a service disease or injury. But that presupposes that the VA must be directed by the claimant. The claimant need not direct the VA. The claimant must merely present himself with a current disability. So in my hypothetical, even in my hypothetical, you say broken leg, you know, ten years later the VA still has to go back and ask whether there's a direct service connection. Yes. Every single time there's a condition that the veteran calls for the attention of the VA, they've got to go investigate, even though there's no reason to believe that it was directly service-connected. Yes, because that is the system that was designed by Congress. The system designed by Congress was not intended to require the claimant to direct the VA. The system designed by Congress was to have the VA undertake a full development of the record, and all that is asked for on the VA Form 21-526 is what's your current disability. It doesn't ask you where you were injured during service. It may ask where you were treated during service, but it doesn't ask anything about any injury that may have taken place during service. So as a consequence, because of the VA's own form, it's the VA that has to ask these questions. Now, one of the ways to do that in its VCA notice is to simply say to the veteran, you told us that you have this disability. Are you asserting that you were injured in service or that there was a disease in service? Yeah, but hold it. You use a word that's very slippery, and I'm sure you don't intend that. Oh, well. And the word you use is development. Yes. Let's assume for the moment that Mr. Robinson, he has a medical record that the VA has and a service record that the VA has, and he comes in and he says, I've got peptic ulcer or I've got heart disease. Well, I assume they scoop up the whole record and put it out in front of the RO, wouldn't just go through the record and say, just give me the pages that have the word heart on them. That isn't the way they do it. They take the whole file. Well, it's… Now, wait a minute. The statute requires obtaining evidence, assistance in obtaining evidence. Okay, here is the evidence. It's in this record. The question that I think we're looking at is how much time do they spend trying to find an explanation for heart disease rather than an explanation for peptic ulcer? That is to say, if 10 years later the veteran says, gosh, I've got a heart disease that's connected to my ulcer, when they open that file, is it your view that they should look at it not from the viewpoint of whether there is heart disease connected to the ulcer, but they should look at it from the viewpoint, did he ever have a pain in his chest during his service claim? That's your argument. So it's not really an evidentiary or record development. It's really a theory development. Is that right? Absolutely, Your Honor. Absolutely. So you think that it's your argument that the VA has an obligation to come up with every possible theory that may be available, every possible cause, every possible issue that might be in there, even if the…